SOREN STEFFENSON *vs.* CHICAGO, MILWAUKEE & ST. PAUL RY. CO.

Argued Jan. 4, 1892. Decided Feb. 1, 1892.

**Evidence Examined.**—Upon an examination and consideration of the evidence in an action brought to recover damages for injuries alleged to have been caused—*First,* by the negligence of a coemploye in overloading a hand car in which plaintiff, a section hand, rode to his work; and, *second,* by the negligence of another coemploye in pushing plaintiff from the car, —it is *held,* that there was no evidence which would have justified the jurors in finding that the hand car was overloaded, and hence the court erred in refusing to so instruct the jury.

**Charge to Jury Examined.**—Other alleged errors of the court in refusing to charge as requested by defendant disposed of.

**Reading Law Books to Jury.**—The practice of counsel of reading from law books when arguing a case to the jury is an exceedingly dangerous one, and should not be indulged in. It is not apparent, in the case at bar, however, that defendant was prejudiced by an act of plaintiff's counsel of the character referred to.

Appeal by defendant, the Chicago, Milwaukee & St. Paul Railway Company, from an order of the district court, Mower county, *Farmer,* J., made August 15, 1891, refusing a new trial.

The plaintiff, Soren Steffenson, was a section hand at work on August 13, 1888, for defendant under Charles Bush, the section foreman. While going east along the track upon the hand car with his foreman and the section crew, they saw an approaching train, and, in the endeavor to stop the hand car to get off the track with it, plaintiff was thrown forward, and had one bone of his right leg broken near the ankle, and a compound dislocation of the other bone in the ankle joint. The platform of the hand car from which plaintiff fell was six feet long by four feet five inches wide.

On the first trial of this action the defendant obtained a verdict, which, on appeal to this court, was set aside. 45 Minn. 355. A new trial was had on March 23, 1891, at which plaintiff obtained a verdict for $2,000. On the trial defendant requested the judge to charge the jury as follows:

2. If the jury believe from the evidence that at the time the foreman, Bush, ordered the car to be stopped the plaintiff stood in such a position that Connors could not apply the brake to stop the car in the ordinary and usual manner, without crowding or pushing the plaintiff so as to cause him to fall off the car, then the plaintiff assumed the risk of being so pushed or crowded, and cannot recover in this action.

3. If the jury believe from the evidence that the plaintiff was pushed or crowded off the car by Connors, and that it was not necessary, in applying the brake in the ordinary or usual manner, for Connors to so crowd or push the plaintiff, and that, in crowding or pushing the plaintiff, Connors acted willfully or purposely, such an act would be one for which the defendant is not liable, and the plaintiff could not recover.

These requests were both refused, and defendant excepted.

*Kingsley & Shepherd,* for appellant.

The court should have charged the jury as requested in the second request of the defendant. If the plaintiff was standing in the way of Connors when he applied the brake, or if he was standing in such a position that Connors could not apply the brake in the ordinary and usual manner without crowding or pushing him so that he fell off the car, he was bound to know that fact when he

took that position, as the risk was open to ordinary observation. *Pederson* v. *City of Rushford,* 41 Minn. 289; *Walsh* v. *St. Paul & D. R. Co.,* 27 Minn. 367; *Quick* v. *Minnesota Iron Co.,* 47 Minn. 361.

The court erred in refusing to give the third instruction requested by the defendant. As to a willful or intentional act, the master was not liable, although it was done in the performance of his service, unless the master commanded the act, or was present and did not dissent. *McManus* v. *Crickett,* 1 East, 106; *Cleveland* v. *Newsom,* 45 Mich. 62; *Fraser* v. *Freeman,* 43 N. Y. 566.

Upon the argument of counsel in addressing a jury, the practice of reading to them from books of the law is erroneous. 1 Thomp. Trials, §§ 941–947; *Johnson* v. *Culver,* 116 Ind. 278; *Ricketts* v. *Chesapeake & O. Ry. Co.,* 33 W. Va. 433; *Lendberg* v. *Brotherton Iron Min. Co.,* 75 Mich. 84; *Laughlin* v. *Street Ry. Co. of Grand Rapids,* 80 Mich. 154; *Baker* v. *City of Madison,* 62 Wis. 137; *Mullen* v. *Reinig,* 72 Wis. 388; *Tuller* v. *Talbot,* 23 Ill. 357; *Sprague* v. *Craig,* 51 Ill. 288; *Williams* v. *Brooklyn El. R. Co.,* 126 N. Y. 96.

The verdict was not justified by the evidence, and should be set aside on that ground. There was not sufficient evidence of negligence on the part of the defendant to support the verdict. The general verdict involved a finding by the jury that the defendant was negligent in respect to the overloading of the car, and in respect to the acts of Connors in applying the brake at the time of the accident.

*John A. Lovely* and *French & Wright,* for respondent.

The court committed no error in refusing to give defendant's second request. There is no proof in the record that it was necessary for Connors, in the performance of the business, to push the plaintiff off. If Connors could not have applied his foot to the brake without pushing Steffenson off, he should not have acted at all. The fact that plaintiff stood upon the car in his usual position did not require him to assume that he would be pushed off, which is the position counsel takes by this instruction. Employes do not assume that their fellow servants or coemployes will necessarily be negligent. They do not assume that their lives will be jeopardized by the acts of their fellow servants. They do not assume, either, that their fel-

low servants, in the performance of their duty, will act in a way that will subject them to extraordinary hazards. *Malcolm* v. *Fuller*, 152 Mass. 160; *Dorsey* v. *Phillips & Colby Construction Co.*, 42 Wis. 583.

The third instruction requested lays down this proposition of law: that if Connors acted willfully, the defendant is not liable, although he acted negligently. The defendant was responsible for the acts of Connors if he were negligent, without regard to the purpose or intention of Connors in the perpetration of the act, as he was acting within the scope of his employment. *Rounds* v. *Delaware, L. & W. R. Co.*, 64 N. Y. 129; *Cohen* v. *Dry Dock E. B. & B. R. Co.*, 69 N. Y. 170; *Holmes* v. *Wakefield*, 12 Allen, 580; *Higgins* v. *Watervliet Turnpike & R. Co.*, 46 N. Y. 23; Mechem, Ag. § 740; *Field* v. *Chicago, B. & Q. Ry. Co.*, 14 Fed. Rep. 332.

If the trial court permit counsel to read to the jury from books of the law, or decisions of the courts, and the passages which counsel read are good law, applicable to the case before the jury, and contain no matter having a tendency to prejudice their minds in the decision of the case, it is not legal error for which an appellate court will grant a new trial. 1 Thomp. Trials, § 949; *Missouri Pac. Ry. Co.* v. *Lamothe*, 76 Tex. 219; *Gilberson* v. *Miller Mining & Smelting Co.*, 4 Utah, 46; *Norfolk & W. R. Co.* v. *Harman's Adm'r*, 83 Va. 553; *Reg.* v. *Courvoisier*, 9 Car. & P. 362; *Curtis* v. *State*, 36 Ark. 284; *Williams* v. *Brooklyn El. R. Co.*, 126 N. Y. 96; *Rutledge* v. *Hudson*, 80 Ga. 266.

The verdict is fully sustained by the evidence. It seems to us, upon examination of the evidence, that the injury occurred in the most natural manner possible, assuming, of course, that Connors was negligent in his movements.

COLLINS, J. The only question presented or considered on the former appeal in this case—45 Minn. 355, (47 N. W. Rep. 1068)—was whether the plaintiff, a section hand injured while riding on a hand car, was within, or protected, so to speak, by the coemployes' act of 1887. It was there held that he was, and upon a second trial the verdict was against the defendant. The present appeal is from an order denying a new trial. The main facts were that plaintiff was

on a hand car going easterly upon the railway, in the course of his regular employment, with other sectionmen, eight in number, including their foreman. One Chapman had been overtaken as he was walking along the track, and, at the foreman's invitation, had boarded the car, taking position at the rear or west end. There was the usual upright iron framework in the center of the car, with levers and handles by which it is propelled; and on the east end, rising, near the framework, a few inches above the floor or platform of the car, was the ordinary foot brake, used to stop, in connection with the handles. When starting out the men had taken their places at the handles as they chose, as was the custom, and without instructions, and had gone to work "pumping," that the car might be propelled along the rails. The plaintiff, with three others, stood upon the east or forward end, riding backwards as they worked the handles, and in a row, plaintiff and one Connors on the inside. The former was upon the right, and Connors upon the left, side of the brake, and, of course, they stood close together. Observing an approaching train, the foreman ordered the car stopped. Connors applied his foot to the brake, and in so doing, it was alleged by plaintiff, negligently pushed plaintiff off the car onto the ground, thereby causing the injuries for which he demands compensation in this action. According to the complaint, the negligence relied upon to establish plaintiff's cause of action was—*First,* in overloading the car at the outset with the men and their belongings, and in further overloading when Mr. Chapman was taken on; and, *second,* the careless and negligent pushing or crowding of the plaintiff from the car by Connors, when he used the brake. If it was not shown by adequate testimony that in one or both of these particulars there was negligence, the verdict cannot be allowed to stand. The appellant's counsel contend that there was not sufficient proof of either allegation of negligence, and also contend that the court erred when refusing to instruct the jury as requested by them on these points, as well as upon some other matters, to which brief reference will be made further on. We have examined the testimony carefully, and fail to find any which will sustain the charge that the car was overloaded at any time, unless we assume that nine or ten men, with their tools and dinner pails, would

overload a car of the size of the one in question. No one testified, or attempted to testify, that there were too many persons on the car when it started, or that it was overloaded when another was added; and it is plain that Chapman in no manner interfered with plaintiff's safety, or in any way contributed to the accident. He boarded the car at the west end, and remained there, while plaintiff and three others were at the east end, and entirely cut off and separated from those upon the west end of the car by the upright frame, about three feet high, the levers, and the handles, the latter in motion. Again, it was undisputed that, while plaintiff had worked upon the section but eleven days, the nine men habitually rode upon the car when going to and returning from their work. The custom was to carry all these men, and of this plaintiff made no complaint. He also knew when the foreman invited Chapman to ride, and when the latter got upon the car, but made no objection. There were several reasons why all consideration of the charge of negligence in overloading the car should have been taken from the jury, but it was not. In the general statement of the law, without a request from plaintiff's counsel, the court charged that, if the jury believed from the evidence that the injury was caused by negligence in overloading the car, or that overloading contributed to the injury, plaintiff was entitled to recover. This was error in view of the state of the proof, but defendant's counsel neglected to take an exception. They did except, however, when the court refused to charge, as they requested, that there was no evidence which would warrant the jury in finding that the car was overloaded at the time of the accident. It was prejudicial error for the court to decline to give this request, for which defendant company is entitled to a new trial.

The manner in which plaintiff was pushed or crowded from the car was not made to appear with much definiteness, so far as his own testimony was concerned. He stated that, when the foreman cried, "Stop," the man standing "beside of me pushed me off." Being asked how Connors took hold of him, he replied, "He pushed towards me on one side so hard that I had to let go" of the handles. This was plaintiff's version of the affair, and it might have been strictly true without establishing Connors' negligence. It would not neces-

sarily follow from the fact that plaintiff was pushed and fell that the person who did the pushing was negligent.   It was Connors' duty to apply his foot to the brake, which was between the parties near the floor of the car, and in that way throw his weight upon it when told by the foreman to stop.   The crowding or pushing might have been purely accidental.   Or plaintiff might have been out of his place, or in such a position as to make it absolutely necessary that he be pushed, unless he got out of the way himself.   Connors owed a duty to the defendant company, and to the other men upon the car, when the order came from the foreman.   It was to be reasonably diligent, and to use ordinary care in respect to the brake.   Had he failed to act with reasonable diligence, and omitted to exercise ordinary care when directed to stop the car, and a collision with the approaching train had resulted, he would have been guilty of negligence, and, in case injuries were received by the men, defendant company would have been declared liable in damages.

Now, from the testimony of other witnesses called for plaintiff, it seems that when the order came both Connors and himself had hold of the handles with both hands.   The former did not remove his hands, but with a firm grasp, which aided in stopping the car, he turned his body, not in an unusual manner, towards plaintiff, in order to get his foot upon the brake, whereupon the latter let go, and fell backwards, or sideways, upon the rails immediately in front of the car.   It was so nearly stopped, however, that it did not touch him.   With this state of the testimony the jury might have surmised that Connors was negligent, but, at best, it was exceedingly uncertain. In view of another trial, we call attention to this point at the present time.

The court ruled correctly when declining to give the appellant's second and third requests, not only for the reasons stated in respondent's brief, but particularly because there was no testimony which would have justified the consideration of either.

When making the closing argument, and under defendant's objections, one of plaintiff's counsel was permitted by the court to read section one (1) of article eight (8) of the constitution of the state to the jury, and also a portion of the opinion of this court in *Lavallee*

v. *St. Paul, M. & M. Ry. Co.*, 40 Minn. 249–252, (41 N. W. Rep. 974.) We have not been able to discover wherein the defendant was prejudiced by counsel's reading, but take this occasion to remark that the practice of reading from the law books is an exceedingly dangerous one, and should not be indulged in. The law when presented in this form should not come from the counsel. We are not prepared to say that prejudicial error will always result from such a course of conduct, for it would probably depend upon the circumstances of the case in hand.

Order reversed.

(Opinion published 51 N. W. Rep. 610.)